Catherine Cabalo (SBN 248198)
Khushpreet Mehton (SBN 276827)
PEIFFER WOLF CAR KANE
CONWAY & WISE, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 766-3592
Facsimile: (415) 840-9435
ccabalo@peifferwolf.com
kmehton@peifferwolf.com

Aaron Clefton (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone: (510) 832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
SARA HAZLEWOOD

Irakli Karbelashvili (SBN 302971)
ALLACCESS LAW GROUP
irakli@allaccesslawgroup.com
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA HAZLEWOOD,<br><br>    Plaintiff,<br><br>  v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; MILDRED GARCIA, Chancellor of California State University, in her official capacity; ADELA de la TORRE., President of San Diego State University, in her official capacity; CITY OF SAN DIEGO; AZTEC SHOPS LTD; MONTEZUMA ROAD ASSOCIATES, L.P.,<br><br>    Defendants. | CASE NO. 3:25-cv-1378-RSH-KSC<br>Civil Rights<br><br>**FIRST AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*) (Emergency Management);<br>2. Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*) (Program Access);<br>3. Section 504 of the Rehabilitation Act of 1973. (29 U.S.C. § 701 *et seq.*);<br>4. Fair Housing Amendments Act (42 U.S.C. § 3601 *et seq.*);<br>5. California Gov't Code § 11135;<br>6. Fair Housing and Employment Act (Cal. Govt Code § 12955 *et seq.*); and<br>7. California Disabled Persons Act (Cal. Civ. Code § 54 *et seq.*).<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SARA HAZLEWOOD complains of Defendants BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; MILDRED GARCIA, Chancellor of California State University, in her official capacity; ADELA de la TORRE., President of San Diego State University, in her official capacity; CITY OF SAN DIEGO; AZTEC SHOPS LTD; MONTEZUMA ROAD ASSOCIATES, L.P. (collectively, "Defendants"); and each of them, and alleges as follows:

## **INTRODUCTION**

1.    Plaintiff SARA HAZLEWOOD ("Plaintiff") is a disabled student enrolled at San Diego State University ("SDSU"). She brings this action to challenge Defendants failure to remove architectural and policy barriers that prevent them from having access to a variety of the programs, services, and activities offered at SDSU, including academic programs, residential housing programs, emergency management services, and other programs or activities.

2.    SDSU prides itself on its adaptive sports programs for disabled athletes.[1] SDSU claims to have the first collegiate athletics program for disabled individuals in California.[2] SDSU's Adapted Athletics program advertises and recruits disabled students with opportunities to participate in competitive collegiate sports. When exploring her options for higher education, Plaintiff relied on representations of this inclusivity when deciding to attend SDSU.  In reality, however, SDSU's housing and broader university campus are replete with architectural barriers to her access (including across large swaths of the paths of travel and throughout facilities serving students).  As a result, Plaintiff was deprived of the equal benefits of SDSU's housing, education, and general access to many of the paths of travel connecting her dorm and/or residence with classrooms and campus facilities. Unfortunately, the

---

[1] https://www.sdsu.edu/news/2025/03/disability-celebration-month-empowering-athletes-and-transforming-lives
[2] https://thedailyaztec.com/118369/sports/a-look-into-sdsus-adapted-athletics-program-and-upcoming-school-year/

FIRST AMENDED COMPLAINT

1  classrooms themselves were also inaccessible, often providing no accessible seating
2  or crowded desks she could not access in her wheelchairs.

3      3.    An additional concern of Plaintiff is Defendants' failure to develop
4  and implement an emergency management plan that considers the needs of disabled
5  people. As a result, Plaintiff has been effectively excluded from SDSU's emergency
6  management services, programs, and activities, faces ongoing discrimination, and is
7  disproportionately at risk of harm, including injury or death.

8      4.    These conditions have not improved over the three years Plaintiff has
9  attended SDSU despite her attempts to resolve them without the need for this lawsuit.

10                          **JURISDICTION**

11      5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331
12  for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.
13  12101 *et seq.,* the Fair Housing Amendments Act ("FHA"), 42 U.S.C. § 3601 *et seq.*;
14  Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et*
15  *seq.*; the  California Government Code § 11135; the California Fair Employment and
16  Housing Act ("FEHA"), Cal. Govt Code § 12955 *et seq.*; and the California Disabled
17  Persons Act ("DPA"), Cal. Civ. Code § 54 *et seq.*

18                           **VENUE**

19      6.    Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is
20  founded on the fact that the real property which is the subject of this action is located
21  in this district and that Plaintiff's causes of action arose in this district.

22                          **PARTIES**

23      7.    Plaintiff is a California resident and an enrolled student at SDSU. She is
24  a "person with a disability" or "physically handicapped person" as defined by federal
25  law. Plaintiff has mobility issues caused by a neurodegenerative disease that affects
26  the nervous system called Friedreich's ataxia, which affects her limb strength,
27  balance, and stamina. Plaintiff's disabilities substantially limit her ability to ambulate
28  (*i.e.*, walk or stand unassisted).   She requires the use of a wheelchair power

wheelchair when ambulating outdoors and uses a manual chair while inside her home.

8.    Plaintiff cannot use portions of public facilities that are inaccessible to mobility disabled persons, including those who require the use of a wheelchair. Plaintiff is entitled by permit from the State of California to park any vehicle that she drives or in which she is transported, in a designated and properly configured disabled accessible parking space. Plaintiff requires parking places that are properly accessible, located on an accessible path of travel, and proximate to the public entryways to public facilities that she uses.

9.    The California State University system ("CSU") is a governmental entity that operates public universities throughout California, including SDSU.

10.    Defendant BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY ("Trustees") adopt and oversee the implementation of all policies throughout the entire CSU system, including SDSU Those policies include, *inter alia*, policies related to disabled access at SDSU.

11.    At all times relevant to this Complaint, Defendant Trustees was and is the owner, operator, lessor, and lessee of the businesses, properties, facilities and/or portions thereof of all CSU campuses, including SDSU which is located at 5500 Campanile Drive, San Diego, California.

12.    Defendant Chancellor MILDRED GARCIA is the chief executive officer of CSU and has authority and responsibility to take whatever actions are necessary for the appropriate functioning of each CSU campus, which include adopting and overseeing the implementation of all policies at SDSU. Those policies include, *inter alia*, policies related disabled access at SDSU.

13.    Defendant President ADELA DE LA TORRE is the chief executive officer for SDSU and has authority and responsibility to take whatever actions are necessary and consistent for the appropriate functioning of SDSU, which include adopting and overseeing the implementation of all policies for the campus. Those

FIRST AMENDED COMPLAINT

policies include, *inter alia*, policies related to disabled access at SDSU.

14.    Defendant CITY OF SAN DIEGO is a public entity who is responsible for creating and maintaining certain sidewalks on or around the SDSU Campus.

15.    Defendant AZTEC SHOPS LTD is a private entity who, at all times relevant to this Complaint, was and is an owner, operator, lessor, and lessee of some of the businesses, properties, facilities and/or portions thereof of all CSU campuses, including SDSU, which is located at 5500 Campanile Drive, San Diego, California.

16.    Defendant MONTEZUMA ROAD ASSOCIATES L.P. is a private entity who, at all times relevant to this Complaint, was and is an owner, operator, lessor, and lessee of some of the businesses, properties, facilities and/or portions thereof of all CSU campuses, including SDSU, which is located at 5500 Campanile Drive, San Diego, California.

17.    Plaintiff is informed and believes, and on such information alleges, that at all times mentioned here, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated here within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of here. All actions alleged herein were done with the knowledge, consent, approval and ratification of each of the Defendants here, including their managing agents, owners, and representatives.

## **FACTUAL STATEMENT**

18.    Plaintiff chose SDSU over her other options for college specifically because of their Adaptive Athletics program which actively recruits disabled students for SDSU. Plaintiff felt she had meaningful conversations with the disabled student's assistance program and other disabled students which gave Plaintiff a positive feeling about SDSU prior to arriving there. Plaintiff enjoys rock climbing and loves sports

in general, so she thought it would be fun to meet other disabled students at a college that emphasized welcoming disabled athletes like herself. SDSU offered Plaintiff admission, and she accepted in May 2022. Regrettably, the reality for disabled students at SDSU is a far cry from what was represented to her. The campus was replete with physical barriers to access in both its housing program and its built environment. This included the paths of travel throughout campus and SDSU facilities, the buildings where she took her classes, and SDSU's on-campus housing during her freshman and sophomore years. The following is a timeline of Plaintiff's experiences of the inaccessible aspects of her experience at SDSU:

**July 2022**

19.    Plaintiff met with her Student Disability Services ("SDS") counselor to discuss reasonable accommodations, both for her in the classroom and for housing. She was assured all the classroom accommodations she asked for would be available to her, but she would need to address them with her professors. She sent a letter through SDS to her professors with her accommodation requests, and her professors claimed to handle the accommodations. Later after classes started, many of these accommodations were denied or not offered despite being previously granted and agreed upon. Plaintiff was also told that housing accommodations would have to be dealt with by SDSU's housing, not SDS.

20.    In late July 2022, there was a student housing orientation. Plaintiff had previously not been able to see online any details about the layout or photographs of the allegedly accessible rooms or other amenities, so wanted to see for herself how accessible the housing was. This proved difficult. During the orientation she got to tour her room at South Campus Plaza ("SCP"), but the SDSU employee guide wouldn't allow her to look at the laundry room or the kitchen, both of which were inaccessible in multiple respects.

21.    The door to the kitchen was excessively heavy and it was difficult to for Plaintiff to maneuver and enter the kitchen (especially while carrying things). The

FIRST AMENDED COMPLAINT

sink was a cabinet style with a door blocking her ability to roll under. The lack of space to roll-under was true for counters as well. Accordingly, Plaintiff had to reach excessively to do anything she needed to do in the kitchen which could impair her stability and balance.

22.    The door to the laundry room was very heavy, and there were many washers and dryers crowded into the space that made it difficult to squeeze her wheelchair through the path of travel. There was insufficient turn around space. Ultimately, this meant she had to request help from others to do laundry and cook rather than perform the tasks herself.

23.    The exterior entry door to her dorm room was also excessively heavy and both it and the key fob were difficult to use due to her disability. Plaintiff requested that the housing department install an automatic door opener the first weeks of school, but they never did. Seeing no clear alternatives with the school year about to begin, Plaintiff did reluctantly accept the housing. She was placed on the second floor, requiring an elevator to enter her dorm and/or leave the building.

**August 2022**

24.    As she settled in, Plaintiff worried about what would happen in an emergency when living alone on the second floor. She was nervous about fire drills and how to participate in them. She contacted her SDS counselor for information about how those would work both in the classroom and at the dorm. The counselor did not have answers and instead instructed her to reach out to the University Police and her RA. Her RA (a sophomore at SDSU) knew nothing about what Plaintiff was supposed to do in an emergency. Similarly, Plaintiff did not receive any instruction about classroom evacuations and just hoped a real emergency would not happen.

25.    In the dorm, Plaintiff's RA came to her door the night of the first fire drill to warn her about it. He told her to just go to the common area on her floor and wait. The RA was not sure what would happen next. Once there, a Residence Hall Coordinator ("RHC") told Plaintiff that in the event of real emergency, firefighters

would come up and get her. There was nothing to indicate how firefighters would know Plaintiff was even in the building or where she would be waiting.

26.    There were several fire drills over the time Plaintiff stayed in this dorm. For many drills Plaintiff was alone in the common area for upwards of 20 minutes, unsure if it was a drill or an actual emergency. Plaintiff received no instructions about what to do beyond staying put and apprehensively waiting for rescue.  During one of the drills, someone took Plaintiff to the elevator, which would not have been in service in a real fire or emergency. They then told her to go out the back door and follow the guides. The meetup spot was about a block away, but the route of travel was not accessible and required traversing curbs without ramps. Plaintiff could not move past these barriers. In the end, Plaintiff stayed with a guide just outside the building. Had it been a real emergency Plaintiff might have been injured or killed without a safe and accessible way to escape.

**September 2022**

27.    The access difficulties Plaintiff had inside her dorm continued when getting to class and in the classes themselves. Attached as **Exhibit 1** is a map of campus with identified areas where Plaintiff encountered barriers to her access throughout her time at SDSU that began when she arrived on campus and continue until today.

28.    Once Plaintiff reached her classes, there were more access difficulties. For example, one of Plaintiff's requested and granted accommodations was for a wheelchair accessible desk in her classes. She believed it would be provided for her on the first day of class, but often it was missing or consistently pushed into the back corner, where it was unavailable and useless to her. She often would have to transfer to a regular desk instead with difficulty. The desks were wobbly and dangerous for her to use.

29.    Plaintiff began her first lab class in September 2022. This lab was conducted in a room with desks. The room was small, and the desks were crammed

FIRST AMENDED COMPLAINT

in.  As a result, she was unable to navigate around or transfer to a desk without her wheelchair blocking everyone's path. After the first three weeks she stopped attending this lab because it was so stressful and embarrassing.

30.    Plaintiff took the following classes in Fall 2022:

- *Rhetoric of Written Argument (RWS 100),* Storm Hall room sh-128.The location of Storm Hall included a path of travel that was excessively steep.

- *Math 150* – Hepner Hall, room hh-130. The path of travel included tree roots protruding in the sidewalk, a safety hazard for Plaintiff.

- *Math 150 TA Section,* North Education, room, ne-172. There was a steep path of travel and entrance to the entrance door, and it was hard to push the button & maneuver in the space

- *History from an American Indian Perspective to 1870* (Amind 140) – Physics Building, Room 144. Issues with the desks as described above.

- *Introductory Computer Programming (CS 150)* – Lambden Hall Room 343. This had issues with the desk as well.

- *General Studies 100-A* – South Campus Plaza South Building, Room 222. The door to this room was excessively heavy.

- *Computer Science Lab 150L* - Geology Mathematics Computer Sciences room 310. The issues with the desk as described above occurred here.

31.    In addition to struggles with her dorm, paths of travel, and in the classroom, her social life was impacted as well. She was disappointed to find out that she could not get accessible seating student tickets to football, and later basketball games. The free student tickets provided were not accessible, and it was impossible for her to afford to buy accessible seating as a student beginning her college journey.

## **November 2022**

32.    Plaintiff was concerned that the inaccessible aspects of her housing

would continue for a second year if she did not verify her accessible housing options in advance. In November 2022, she reached out to housing office to make a reasonable accommodation request to tour accessible dorm rooms to see what would work for her accessibility needs for the next year. They denied this request and said she could not tour them because they were occupied by other students. She then asked for photos and measurements of their configuration, but they claimed that they did not have any.

33.    For the next several months between November 2022 and March 2023, Plaintiff had several conversations with SDSU's housing office to request measurements, photos of accessible rooms, and other aspects of accessibility in housing. She requested to stay in Piedra Del Sol because she had a friend there and she thought that it would work for her accessibility needs. Housing told her they could not install grab bars in that apartment complex because of the thin walls. Plaintiff ultimately agreed to live in Aztec Corner because she was assured that it would be accessible.

**January 2023**

34.    Plaintiff encountered similar barriers in her second semester starting January 2023. Given how difficult accessing classes was in her first semester, she took several online courses instead, including: American Sign Language (DLE 101) – online, Intermediate Computer Programming (CS 160L) – online, and Oral Communication (AFRAS 140) – online. Her other classes proved more difficult to access:

- *Math 151* – Hepner Hall Room 130 still had tree roots protruding in the sidewalk, a dangerous condition due to sudden changes in elevation.
- *Computer Science 160* – Lamden Hall room 343.  Denied an accessible desk.  The one provided to her was on wheels which made it very difficult to transfer from her wheelchair to the desk.
- *Philosophy 200* – Student Services West room 2500. The push button

10

FIRST AMENDED COMPLAINT

frequently did not work.

- *Math 151 TA Section* – Lamden Hall Room 258. Denied access to accessible desk as described above.

### January 2023

35.    Plaintiff requested that Defendants reserve her a stall or allow her to park in an employee stall to help her get closer access to her classes. Defendants denied these requests. As a result, Plaintiff had to park in the designated accessible stalls around campus that anyone could use, even the general public. She encountered several paths of travel from these parking spaces that included torn up sidewalks with dramatic changes in elevation and cracks. These paths of travel also required crossing major street intersections where the time allowed by metered lights for crossing the street was too short for Plaintiff.

### August 2023

36.    Plaintiff arrived at Aztec Corner for her sophomore year, where Defendants indicated she would have accessible housing. On August 17, 2023, she arrived on campus to move in. She arrived in the morning and discovered that the elevator was broken. Her apartment was on the third floor, so she had no way to access it. Unfortunately, this first impression of the lack of elevator access and maintenance would not be the last one. The elevator was also inoperable on at least the following dates: August 18, 2023, August 19, 2023, October 9, 2023, November 4, 2023, November 5, 2023, January 27, 2024, February 3, 2024, February 4, 2024, February 10, 2024, February 17, 2024, February 24, 2024, March 5, 2024, March 9, 2024, March 10, 2024, and March 14, 2024.  This pattern evidenced deliberate indifference and denial of reasonable accommodation to Plaintiff as a disabled person needing the elevator to come and go from her apartment.

37.    In response to the elevator not being operable, Plaintiff immediately contacted Resident Housing Coordinator ("RHC") "Kylee." RHC said that the elevator tech would be there to fix it in a few hours. The elevator tech came in the

afternoon and fixed the elevator. Plaintiff returned the next day to move into the room. She finished moving in the afternoon. She and her parents went out to dinner and returned around 9 p.m. When they returned, they found the elevator was broken again. The tech came and fixed it again at 10 p.m. Plaintiff was forced to wait with her parents because her only means of reaching her dorm room was broken again.

38.    Plaintiff's dorm room was not accessible in multiple respects. There were no grab bars in the shower, and the sink was inaccessible because it lacked the clear floor space required to accommodate her wheelchair underneath. The microwave was mounted at a height which was inaccessible and beyond appropriate and safe reach ranges. The counters were difficult to use because there was no space for Plaintiff to roll her wheelchair under. The bedroom door was too narrow for her wheelchair to fit through. The bed height was very high which made transferring from her wheelchair to her bed difficult for Plaintiff, and the furniture in the bedroom was very close together which made it difficult for Plaintiff to navigate the paths of travel around the bedroom.

39.    Plaintiff was concerned about the frequency of the elevator breaking so she spoke with RHC Kylee about switching rooms. The next day, RHC Kaylee found a room on the first floor of Aztec Corner, but it too was inaccessible to Plaintiff as there were no grab bars in the restroom, among other issues. It had a bathtub instead of a roll-in shower which was not accessible due to the lack of grab bars (although these were installed during Plaintiff's tenancy). There were no grab bars surrounding the toilet and none could be installed due to the placement of the toilet. There was a lip at the entry door to the apartment which required Plaintiff to "wheelie" over it in her wheelchair exposing Plaintiff to unreasonable risk of harm. The microwave was too high. Additionally, since this room was shared by four people instead of two people, there was limited storage space in the common areas for Plaintiff's accessibility devices. SDSU also refused to help Plaintiff move her stuff from her third-floor dorm to the first-floor room.

FIRST AMENDED COMPLAINT

40. Plaintiff asked the building's manager about an emergency evacuation plan on move-in day. The manager knew nothing and reached out to SDS. SDS employee Peter Vu told them they needed to make an emergency evacuation plan on their own.

41. Plaintiff had her car on campus, and her parking space at Aztec Corner was underground and required the elevator to access. It was not working many times, denying her access to her car.

**January 2024**

42. Despite the hardship of living in Aztec Corner and difficulties getting to class, Plaintiff wanted to continue to live on campus Junior year because she thought it would be easier for her to get to class. As such, she requested this accommodation from Defendants. Defendants told her that she would not be guaranteed housing because of the number of students coming onto campus. Defendants would not let her know until May 2024 if she had housing on campus. Unfortunately, this would be too late to secure accessible off-campus alternative housing. Plaintiff had call with SDSU's Tom Hilanto in early 2024 who admitted that SDSU did not have any truly accessible housing on campus. Plaintiff then started looking for accessible off-campus housing options.

43. These barriers to access are listed without prejudice to Plaintiff citing additional barriers to access related to her disability by an amended complaint after inspection by Plaintiff's access consultant. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the SDSU premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, and are barriers Plaintiff may encounter while she finishes her degree at the premises and if she returns to the campus after she completes her degree to visit or for graduate school, which she expects and intends to do once proper disabled access is provided. All facilities must be brought

1  into compliance with all applicable federal and state code requirements, according to
2  proof.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE II OF THE ADA**
3
**Denial of Access - Emergency Management Services, Programs, and Activities**
4  **[42 U.S.C. §§ 12131 *et seq.*]**
5  *(Against Defendants BOARD OF TRUSTEES OF THE CALIFORNIA STATE*
*UNIVERSITY, MILDRED GARCIA, and ADELA de la TORRE)*
6

7      44.    Plaintiff repleads and incorporates by reference the allegations
8  contained in each of the foregoing paragraphs.

9      45.    Title II of the ADA provides in pertinent part: "[N]o qualified individual
10 with a disability shall, by reason of such disability, be excluded from participation in
11 or be denied the benefits of the services, programs, or activities of a public entity, or
12 be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

13     46.    Defendant TRUSTEES is a public entity within the meaning of the
14 ADA. 42 U.S.C. § 12131(1).

15     47.    Defendants MILDRED GARCIA and ADELA DE LA TORRE are sued
16 in their official capacities as the Chancellor of CSU and President of the SDSU
17 respectively. Both CSU and SDSU are public entities within the meaning of the
18 ADA. 42 U.S.C. § 12131(1).

19     48.    Title II of the ADA applies to SDSU's emergency management services,
20 programs, and activities.

21     49.    Plaintiff is, and at all times relevant herein was, a "qualified" individual
22 with a disability within the meaning of Title II of the ADA. 42 U.S.C. § 12102; 42
23 U.S.C. § 12131(2). As a student at SDSU, Plaintiff meets the essential eligibility
24 requirements to access, use, participate in and benefit from SDSU's emergency
25 management services, programs, and activities.

26     50.    Defendants' acts and omissions as alleged above, and described with
27 more detail below, have excluded and/or denied Plaintiff the benefit and use of
28 SDSU's emergency management services, programs, and activities, in violation of

Title II and its implementing regulations. The Defendants' discriminatory conduct includes, *inter alia*:

   a. Failing and refusing to operate SDSU's emergency management services, programs, and activities so that they are "readily accessible to and usable by individuals with disabilities" (28 C.F.R. § 35.150(a));

   b. Denying Plaintiff the opportunity to participate in or benefit from the aids, benefits, or services offered by and through SDSU's emergency management services, programs, and activities, on the basis of her disabilities (28 C.F.R. § 35.130(b)(1)(i));

   c. Affording Plaintiff an opportunity to participate in or benefit from SDSU's emergency management services, programs, and activities that is not equal to that afforded her non-disabled peers (28 C.F.R. § 35.130(b)(1)(ii));

   d. Otherwise limiting Plaintiff in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aids, benefits, or services offered by Defendants by and through SDSU's emergency management services, programs, and activities (28 C.F.R. § 35.130(b)(1)(vii));

   e. Utilizing methods of administration that have the effect of subjecting Plaintiff to discrimination on the basis of her disability (28 C.F.R. § 35.130(b)(3)(i)); and

   f. Failing and refusing to make reasonable modifications in policies, practices, or procedures where necessary to avoid discrimination against Plaintiff on the basis of her disability (28 C.F.R. § 35.130(b)(7)).

**Requirements for Emergency Management Services, Programs, and Activities**

   51. The U.S. Department of Justice ("DOJ") advises that there are at least four essential components of emergency planning that must be addressed to make

FIRST AMENDED COMPLAINT

emergency preparedness programs accessible to people with disabilities.[3]  They are:

    a. *Preparation* – advance planning for emergencies and disasters;

    b. *Testing of Preparedness* – staging emergency simulations and other approaches to testing the effectiveness of emergency preparedness;

    c. *Notification* – alerting the public to emergencies and disasters and to available programs, services, and activities; and

    d. *Community Evacuation* – ensuring that the public can evacuate safely.[4]

52.    The ADA requires that all four of these components be meaningfully accessible to people with disabilities. ADA regulations since 1990 have emphasized that, "[b]ecause people with disabilities may visit, be employed or be a resident in any building, emergency management plans with specific provisions to ensure their safe evacuation also play an essential role in fire safety and life safety." 1991 Standards § A4.3.10 Egress.

53.    The DOJ's guidance also states that "An emergency management plan is the all-important first step in ensuring an effective response to emergencies and disasters. Public officials, specialists from organizations such as the American Red Cross, and community members should work together to develop a comprehensive plan to prepare for emergencies."[5] Further, the DOJ advises that public entities should seek and use input from people with disabilities and organizations with expertise on disability issues to ensure that "emergency planning and preparedness meet the access needs of people with disabilities in your community with respect to all phases of emergency management."[6]

54.    The National Fire Protection Association in conjunction with the United

---

[3] *See* "ADA Best Practices Tool Kit for State and Local Governments: Emergency Management Under Title II of the ADA" (Oct. 26, 2009) available at https://www.ada.gov/pcatoolkit/chap7emergencymgmt.htm.

[4] *See id.*

[5] *Id.*

[6] *Id.*

FIRST AMENDED COMPLAINT

States Access Board advise that emergency planning teams should include people with disabilities, should gather information directly from affected people with disabilities about their needs during an emergency, and should provide ways for people with disabilities to self-identify and communicate their needs.[7] The created plan should also be responsive to the communicated needs of people with disabilities.[8]

### Defendants' Failure to Make SDSU's Emergency Management Services, Programs, and Activities Accessible to People with Disabilities

55.    Plaintiff's personal experiences illustrate that Defendants have failed to address the four essential components of emergency planning for people with disabilities and have not taken the steps required to ensure that their emergency management services, programs, and activities meet the access needs of people with disabilities.

### Preparation: SDSU Fails to Include and Account for People with Disabilities in Emergency Management Plans and Policies

56.    Advanced preparation for emergencies and disasters at SDSU for people with disabilities is virtually non-existent. Upon information and belief, SDSU has failed to prepare for emergencies in a way that accounts for the needs of people with disabilities by (1) failing to create and implement a comprehensive and cohesive plan that includes and accounts for the needs of people with disabilities; (2) failing to train faculty and staff to assist in evacuating people with disabilities during an emergency, and; (3) failing to prepare people with disabilities for an emergency.

57.    Plaintiff's experiences described above indicate that SDSU has no comprehensive plan currently in place for ensuring that people with disabilities will be kept safe during an emergency. This systemic failure puts Plaintiff and others at

---

[7] *See* National Fire Protection Association, *Emergency Evacuation Planning Guide for People with Disabilities* 6 (Nov. 2022) available at https://www.nfpa.org/downloadable-resources/guides/evacuation-guide-pdf.
[8] *See id.*

risk of harm and even death.

58.    Plaintiff's experiences described above indicate that SDSU fails to prepare to meet the needs of people with disabilities in an emergency by failing to train faculty and staff adequately to assist people with disabilities during an emergency.

59.    SDSU's failure to have a comprehensive plan in place that accounts for the needs of people with disabilities combined with its failure to train faculty and staff to assist people with disabilities during an emergency is a violation of the ADA and leaves Plaintiff at great risk of injury and even death during an emergency at SDSU.

60.    Plaintiff's experiences described above confirm that Defendants also fail to prepare for emergencies in a way that accounts for the needs of people with disabilities by systematically failing to prepare people with disabilities themselves.

61.    When students are unsuccessful in proactively locating the information they need to create an effective emergency plan for themselves through asking SDSU faculty and staff, they cannot turn to online information to supplement their efforts.

62.    Emergency planning at SDSU is deficient and discriminatory on the face of available emergency planning materials. SDSU seemingly has no comprehensive emergency plan for people with disabilities that are accessible to students online or otherwise. Plaintiff has asked Defendants' representatives for information about SDSU's emergency management plans, as well as for plans that consider her disabilities—including the provision of emergency evacuation chairs—but they have been ignored.

### *Testing of Preparedness: SDSU Fails to Include People with Disabilities in Emergency Management Drills and Testing.*

63.    The DOJ advises that testing of preparedness includes "staging emergency simulations and other approaches to testing the effectiveness of

emergency preparedness" and that "[o]ne good way to test your emergency management plan is to enlist people with disabilities to role-play during emergency simulations."[9]

64.     Defendants fail to meaningfully test emergency preparedness for people with disabilities on the SDSU campus. Specifics of how disabled people should be included in emergency simulations and drills are not included in policies. Upon information and belief, SDSU has failed to provide any training materials for SDSU staff on these topics. Given that each disabled person must obtain their own emergency preparedness information and must develop aspects of their own emergency plans, there appear to be no opportunities or processes for practicing those plans during broader emergency simulations.

65.     In addition to never being given the opportunity to create an individualized emergency evacuation plan ("IEEP") in collaboration with SDSU, Plaintiff has never been offered the opportunity to practice individualized emergency preparedness plans during an emergency drill.

66.     It is unclear if SDSU has any evacuation chairs on campus (or if they do, where those chairs are located), intercom systems, or other tools for taking personal protective measures at areas of refuge for Plaintiff and other students with mobility disabilities to practice emergency evacuation simulations and testing. Additionally, there is no evidence that SDSU meaningfully practices the use of emergency evacuation chairs with disabled persons or the staff apparently responsible for helping people with disabilities evacuate.

67.     Despite her requests, Plaintiff was denied information, the opportunity to create an IEEP, and/or the ability to practice individualized evacuation plans

---

[9] Department of Justice, "ADA Best Practices Tool Kit for State and Local Governments: Emergency Management Under Title II of the ADA" (Oct. 26, 2009) available at https://www.ada.gov/pcatoolkit/chap7emergencymgmt.htm.

FIRST AMENDED COMPLAINT

during drills. While scheduled drills appear to exist for non-disabled persons, there is no indication that SDSU meaningfully coordinates testing with people with disabilities or includes disabled people in the design, control, or evaluation of their simulations in violation of the ADA. Without an adequate mechanism to create IEEPs and test emergency preparedness operations for people with disabilities, people with disabilities are at risk of injury and death during a real emergency.

### *Notification: SDSU Fails to Notify People with Disabilities of Emergency Planning Resources and Programs That Are Accessible.*

68.    The DOJ advises that emergency notification includes "alerting the public to emergencies and disasters and to available programs, services, and activities."[10] The DOJ recommends that the best practice for emergency planning is for public entities to develop confidential lists of people with disabilities to provide them with access to emergency preparedness programs and evacuation assistance. However, SDSU's website and student handbooks make no reference to any such list. This lack of notification to disabled persons is particularly concerning when combined with Defendants placing the responsibility for emergency preparedness planning on disabled persons themselves.

69.    Beyond this, SDSU provides no information to people with disabilities about how to voluntarily create an IEEP in collaboration with SDSU, how to sign up for disaster preparedness lists that would aid emergency personnel to find and assist them, or how to participate in emergency preparedness drills. No documents on any campus website provide information to persons with disabilities about how they may participate in emergency simulations and drills. No such resources were provided to Plaintiff, even when she specifically inquired about emergency planning for people with disabilities. As a result, SDSU has completely failed to notify disabled people about any emergency preparedness resources that adequately address the needs of

---

[10] *Id.*

FIRST AMENDED COMPLAINT

people with disabilities. SDSU has left disabled people to fend for themselves in an emergency.

### *Community Evacuation: SDSU Fails to Provide Safe Evacuation Options for People with Disabilities.*

70.    The DOJ states that entities "need to establish procedures to ensure that people with disabilities can evacuate the area of an emergency in a variety of conditions, with assistance when it is needed."[11] As discussed above, SDSU has no process for ensuring people with disabilities will be assisted in evacuating during an emergency. Safe means of egress is also essential for meaningful emergency management programs for people with disabilities. Without a safe means of egress, people with mobility disabilities may be unable to evacuate.

71.    To ensure a safe means of egress, SDSU must either provide a rehearsable plan for evacuating disabled persons from an accessible area of rescue with two-way communication for persons with disabilities to reach rescue workers, or a similar plan that includes an evacuation chair that, with assistance of nondisabled persons, a person with a disability can use to exit safely. A safe means of egress is essential and indispensable part of accessible emergency planning and management. The best practice is to have both. For example, in the event of a power outage or structural damage, the communication system may not be available. Therefore, without an alternative means of egress, a disabled person is in danger, alone, and stranded. An evacuation chair in every SDSU building with floors above ground level is necessary to ensure meaningful participation in emergency evacuation programs.

72.    Plaintiff's experiences with SDSU representatives indicate that SDSU may not have two-way communication systems in all its buildings to ensure people with disabilities can communicate with first responders.

73.    Additionally, Plaintiff's interactions with SDSU representatives suggest

---

[11] *Id.*

FIRST AMENDED COMPLAINT

that SDSU does not have emergency evacuation chairs in all multi-level buildings and that SDSU may not have a comprehensive understanding of which buildings have emergency evacuation chairs.

74.    SDSU fails to provide safe evacuation options to people with disabilities, meaning people with mobility disabilities are literally left to fend for themselves on SDSU's campus in the event of an emergency that requires evacuation or some other emergency response.

75.    The barriers alleged herein are listed without prejudice to Plaintiff citing additional barriers to access by an amended complaint after a complete inspection and evaluation by Plaintiff's access consultant(s)/expert(s).

76.    The barriers alleged herein render the services, programs, and activities of SDSU inaccessible to Plaintiff. Plaintiff will continue to encounter these barriers as she finishes her degree. Plaintiff will also encounter these barriers in the future when she returns to SDSU to enjoy the services, programs, and activities available to her as alumni and members of the to the general public, and if she returns to SDSU as a graduate student.

77.    Defendants' obligations under Title II of the ADA are mandatory and long-established. Defendants had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged herein was a willful and knowing decision and choice and/or the product of deliberate indifference.

78.    Defendants have been provided actual notice of their obligations under Title II of the ADA and Defendants' duty to remediate their failures. Despite this knowledge, Defendants have failed and refused to take the steps necessary to address Plaintiff's concerns or otherwise ensure services, programs, and activities comply with the requirements of the ADA. Defendants' failures in this regard constitute deliberate indifference.

79.    Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF TITLE II OF THE ADA**
**Denial of Program Access**
**[42 U.S.C. §§ 12131 *et seq.*]**
*(Against Defendants BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, MILDRED GARCIA, ADELA de la TORRE, and CITY OF SAN DIEGO)*

80.    Plaintiff repleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

81.    At all times herein mentioned, Plaintiff was entitled to the protections of the "Public Services" provisions of Title II of the ADA, Subpart A, which prohibits discrimination by any public entity as defined by 42 U.S.C. section 12131. Pursuant to 42 U.S.C. 12132, section 12132 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the "services, programs or activities" of a public entity, or be subjected to discrimination by such entity. Plaintiff was at all times relevant herein a qualified individual with a disability for all purposes under the ADA.

82.    Title II of the ADA applies to all programs, services, and activities offered at SDSU, including academic and extra-curricular programs and physical buildings.

83.    Title II of the ADA also applies to all sidewalks and the public right of way constructed, controlled, and/or maintained by the City of San Diego.

84.    In violation of Title II of the ADA, Defendants have failed to ensure that individuals with physical disabilities such as the Plaintiff herein are not excluded from "services, programs and activities" at the subject facilities and property. By reason of Defendants' failure to remove architectural and policy barriers to access at the subject facilities to render them "accessible to and useable by" mobility impaired persons, despite actual notice of the inaccessible conditions, and by its policy decisions as above-described including actions and omissions by any predecessors in interest, Defendants have discriminated against Plaintiff in violation of Title II of the ADA and the regulations adopted to implement the ADA.

85.    In addition to their emergency planning and preparedness failures at SDSU, Defendants have failed in numerous other ways to meet their obligations under Title II of the ADA to provide people with mobility disabilities including Plaintiff with meaningful access to SDSU's and the City of San Diego's programs, services, and activities. Specifically, Defendants have: (1) failed to ensure the accessibility and usability of SDSU's and the City of San Diego's existing facilities (28 C.F.R. § 35.150(a)); (2) failed to conduct an adequate self-evaluation or develop an adequate transition plan (28 C.F.R. § 35.105; 28 C.F.R. § 35.150(d)); (3) failed to ensure that "each facility" constructed or altered after June 26, 1992 is "readily accessible to and usable by individuals with disabilities" (28 C.F.R. § 35.151(a)(1), (b)(1)); (4) failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by disabled people (28 C.F.R. § 35.133(a)); (5) failed to ensure that disabled people, can obtain information as to the existence and location of accessible services, activities, and facilities (28 C.F.R. § 35.163(a)); and (6) failed to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability (28 C.F.R. § 35.130(b)(7)(i)).

86.    With relation to damages claimed under Title II of the ADA, each such instance of discrimination is alleged to have been intentional and/or has been created and maintained with deliberate indifference to the effect upon Plaintiff and other similarly disabled persons.

87.    As a result of such intentional discrimination, in violation of section 12132 of the ADA, Plaintiff is entitled to the remedies, procedures and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a), as provided by section 12133 of the ADA.

88.    On information and belief, to the date of filing of this Complaint, Defendants have failed to make the facilities and property as described herein accessible to and usable by physically disabled persons, as required by law, and have

1  failed to adopt policies to assure that disabled persons are provided full and equal

2  access.

3       89.    Plaintiff requests that an injunction be ordered requiring that Defendants

4  make all such facilities and properties herein described accessible to and usable by

5  mobility impaired disabled persons, and to train their employees and agents with

6  regard to having appropriate sensitivity to the needs of physically disabled persons,

7  and in taking appropriate steps to accommodate their disabilities.

8       90.    Plaintiff prays for judgment as set forth below.

9

10
                       **THIRD CAUSE OF ACTION:**

**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**
11
**[29 U.S.C. § 701 *et seq.*]**
12
*(Against Defendants BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; MILDRED GARCIA; ADELA de la TORRE and CITY OF SAN DIEGO)*

13

14       91.    Plaintiff repleads and incorporates by reference the allegations

15  contained in each of the foregoing paragraphs.

16       92.    At all times relevant to this action, the Section 504 of Rehabilitation Act

17  of 1973, 29 U.S.C. § 794, was in full force and effect and applied to the Defendants

18  and their facilities.

19       93.    At all times relevant to this action, the United States Department of

20  Justice ("DOJ") regulations implementing the Rehabilitation Act were in full force

21  and effect and applied to Defendants TRUSTEES, MILDRED GARCIA, ADELA de

22  la TORRE, and CITY OF SAN DIEGO and their facilities.

23       94.    At all times relevant to this action, Plaintiff has had substantial

24  limitations to the major life activities of walking and standing within the meaning of

25  the Rehabilitation Act regulations, 45 C.F.R. § 84.3(j). Accordingly, she is a qualified

26  individual with a disability as defined in the Rehabilitation Act. 29 U.S.C. § 705(9).

27       95.    Upon information and belief, at all times relevant to this action, the

28  Defendants and their facilities received federal financial assistance and were

FIRST AMENDED COMPLAINT

1  therefore programs or activities receiving federal financial assistance under 29 U.S.C.

2  § 794(b).

3       96.    As recipients of federal funds, Defendants TRUSTEES, MILDRED

4  GARCIA, ADELA de la TORRE, and CITY OF SAN DIEGO cannot exclude

5  Plaintiff from participation in, deny Plaintiff the benefits of, or subject Plaintiff to

6  discrimination under any program or activity receiving Federal financial assistance.

7  29 U.S.C. § 794.

8       97.    Defendants TRUSTEES, MILDRED GARCIA, ADELA de la TORRE,

9  and CITY OF SAN DIEGO are also required to reasonably accommodate persons

10  with disabilities in their facilities, programs, services, and activities and "afford

11  handicapped persons equal opportunity to obtain the same result, to gain the same

12  benefit, or to reach the same level of achievement, in the most integrated setting

13  appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

14       98.    As set forth above, Defendants TRUSTEES, MILDRED GARCIA,

15  ADELA de la TORRE, and CITY OF SAN DIEGO discriminated against Plaintiff

16  on the basis of her disability by denying Plaintiff meaningful access to the services,

17  programs, activities, benefits, and facilities Defendants offer to other individuals.

18       99.    Plaintiff's injuries are ongoing so long as the Defendants TRUSTEES,

19  MILDRED GARCIA, ADELA de la TORRE, and CITY OF SAN DIEGO do not

20  modify their policies and procedures and provide meaningful access to services,

21  programs, activities, benefits, and facilities Plaintiff and other persons with similar

22  mobility disabilities.

23       100.   Plaintiff requests that an injunction be ordered requiring that Defendants

24  TRUSTEES, MILDRED GARCIA, ADELA de la TORRE, and CITY OF SAN

25  DIEGO make all such facilities and properties herein described accessible to and

26  usable by mobility impaired disabled persons, and to train their employees and agents

27  with regard to having appropriate sensitivity to the needs of physically disabled

28  persons, and in taking appropriate steps to accommodate their disabilities.

101.  Plaintiff prays for judgment as set forth below.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT**
**[42 U.S.C. § 3601 *et seq.*]**
*(Against Defendants MILDRED GARCIA; ADELA de la TORRE; AZTEC SHOPS LTD; and MONTEZUMA ROAD LIMITED L.P.)*

102.  Plaintiff repleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

103.  Aztec Corner, where Plaintiff resided, is and at all relevant times was a "dwelling" available "to rent" within the meaning of the FHA. 42 U.S.C.A. § 3602. It is and at all relevant times was a "covered multi family dwelling" under section 3604 (f)(7)(A).

104.  Based upon the foregoing, Defendants MILDRED GARCIA, ADELA de la TORRE, AZTEC SHOPS LTD, and MONTEZUMA ROAD LIMITED L.P. have violated the protections afforded to Plaintiff under the FHA, including, but not limited to, the following:

    a. Failing and refusing to make reasonable accommodations in policies, programs, and procedures when such is necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, including but not limited to providing an emergency evacuation plan for Plaintiff in case of an elevator shutdown during said emergency;

    b. Failing and refusing to make the common use areas at the building readily accessible and useable by persons with disabilities.

105.  Defendants have actual and constructive knowledge that accommodations are necessary when the there is an emergency, and the elevator shuts down.  Defendants also had actual knowledge that Plaintiff is a person with a mobility disability who requires accommodation of having an evacuation plan when the elevator is not working.

106.  Defendants maintain a pattern and practice of denying Plaintiff full and

27
FIRST AMENDED COMPLAINT

equal access to her dwelling by failure to maintain accessible paths or travel, and failure to respond to requests for accommodations. 42 U.S.C.A. § 3604(f)(3)(B).

107.    Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA GOVERNMENT CODE 11135**
**[Cal. Gov't. Code § 11135]**
*(Against Defendants BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; MILDRED GARCIA; ADELA de la TORRE and CITY OF SAN DIEGO)*

108.    Plaintiff repleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

109.    Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of ... disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

110.    Defendants' above-described programs and activities are funded directly by the State of California and/or receive financial assistance from the State of California.

111.    SDSU receives state funds through CSU, which funds its operations. SDSU, as part of CSU, relies on state general funds for a significant portion of its operating budget.

112.    Defendant City of San Diego receives state funds through the California Transportation Commission, which has allocated funds, including over $24 million for San Diego County, for various infrastructure improvements, including sidewalks. These funds are used for projects like sidewalk replacement, repairs, and upgrades to meet ADA standards.

113.    In acting as herein alleged, Defendants have denied Plaintiff the benefits of the State funded and/or assisted programs and activities provided by at

FIRST AMENDED COMPLAINT

through SDSU, and/or subjected Plaintiff to unlawful discrimination based on her disabilities, in violation of Government Code section 11135.

114.   California Government Code section 11135(b) incorporates the protections and prohibitions contained in the ADA and its implementing regulations. For all of the reasons outlined above under Plaintiff's First and Second Causes of Action, Defendants have violated and continue to violate the ADA and therefore have violated and continue to violate California Government Code section 11135(b).

115.   Pursuant to California Government Code section 11139, Plaintiff has a private right of action to enforce California Government Code section 11135(b).

116.   Plaintiff prays for judgment as set forth below.

**SIXTH CAUSE OF ACTION:**
**VIOLATION OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**
**[California Civil Code §12955 et seq.]**
*(Against Defendants MILDRED GARCIA; ADELA de la TORRE; AZTEC*
*SHOPS LTD; and MONTEZUMA ROAD LIMITED L.P.)*

117.   Plaintiff repleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

118.   FEHA prohibits discrimination on the basis of disability in housing. Cal. Gov. Code § 12955 *et seq.*

119.   Aztec Corner is a "housing accommodation" within the meaning of FEHA. Cal. Gov't Code § 12927.

120.   Based on the above, Defendants MILDRED GARCIA, ADELA de la TORRE, AZTEC SHOPS LTD, and MONTEZUMA ROAD LIMITED L.P. have violated the protections of FEHA, because of, but not limited to the following:

    a.  Failure to provide an accessible path to/from Plaintiff's unit; and

    b.  Failure to modify policies and practices to provide reasonable accommodations to Plaintiff, including changes in policies, programs and procedures that allow persons with disabilities to enjoy their rental

1          dwelling to the same extent as those without disabilities.

2          c.  Failing to assure that Aztec Corner is adaptable to use by persons with

3             disabilities consistent with the building standards requirement of Title

4             24 of the California Code of Regulations, specifically Chapter 11A of

5             the California Building Code.

6      121.  Plaintiff prays for judgment as set forth below.

7                          **SEVENTH CAUSE OF ACTION:**
       **VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT**
8                      **[California Civil Code § 54 *et seq***
       *(Against Defendants AZTEC SHOPS LTD and MONTEZUMA ROAD*
9                          *LIMITED L.P.)*

10     122.  Plaintiff repleads and incorporates by reference the allegations

11  contained in each of the foregoing paragraphs.

12     123.  The DPA requires, "Individuals with disabilities shall be entitled to

13  full and equal access, as other members of the general public, to all housing

14  accommodations offered for rent, lease, or compensation in this state, subject to the

15  conditions and limitations established by law, or state or federal regulation, and

16  applicable alike to all persons." Cal. Civ. Code § 54.1(b)(1).

17     124.  The Aztec Corner is a housing accommodation under California Civil

18  Code section 54.1(b)(2). Plaintiff is a person with a disability within the meaning of

19  the DPA.

20     125.  Based upon the foregoing, Defendants AZTEC SHOPS LTD and

21  MONTEZUMA ROAD LIMITED L.P. have violated the DPA as follows:

22          a.  Denying Plaintiff full and equal access to her housing

23             accommodations, (Cal. Civ. Code § 54.1(b)(1));

24          b.  Refusing to "make reasonable accommodations in rules, policies,

25             practices, or services, when those accommodations may be necessary

26             to afford individuals with a disability equal opportunity to use and

27             enjoy the premises."  (Cal. Civ. Code § 54.1(b)(3)(B));

28

                                    30
                          FIRST AMENDED COMPLAINT

    c.  Failure and refusal to provide an accessible route to/from Plaintiff's unit;

    d.  Failure and refusal to maintain their accessible features, including but not limited to their elevator and common areas in conformity with American Society of Mechanical Engineers "ASME" Standard A17.1 as mandated by Title 24, California Code of Regulations;

    e.  Failure and refusal to provide an accessible means of egress from their tenant apartments which are required to be accessible in violation of the California Building Code ("CBC"); and

    f.  Failure and refusal to provide an accessible entrance and accessible route to and through all apartments which are required to be accessible and/or adaptable in violation of CBC.

126.  Plaintiff has suffered actual damage because of such failures which she alleges stems from Defendants' knowing and intentional violation of her rights as a disabled person under California Law.

127.  Plaintiff prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff SARA HAZLEWOOD prays for judgment and the following specific relief against Defendants:

FIRST AMENDED COMPLAINT

1.      Issue a declaratory judgment that Defendants' conduct has violated, and continues to violate, Title II of the ADA, Section 504, the FHA, California Government Code § 11135, the FEHA, and the DPA.

2.      Issue a preliminary and permanent injunction directing that Defendants to modify the above described facilities at the property and other non-conforming facilities and related described facilities, and make appropriate policy changes, so that Plaintiff and similarly situated persons with disabilities may obtain the benefits of, and access to all of Defendants' "programs, services and activities" in a "full and equal" manner as required by law; to properly *maintain* such accessible facilities once they are provided; and to train their employees and agents in proper sensitivity to and appropriate responses to the needs and rights of Plaintiff and other physically disabled persons and take all reasonable steps to accommodate their needs, including, but not limited to, warning all disabled members of the public of the lack of access they may face if they attempt to visit or obtain public services at any portion of these premises, before such barriers are removed;

3.      Issue a preliminary and permanent injunction directing Defendants MILDRED GARCIA, Chancellor of California State University, in her official capacity; ADELA de la TORRE, President of SDSU, in her official capacity; AZTEC SHOPS LTD; and MONTEZUMA ROAD LIMITED L.P. to make appropriate architectural and policy changes to cease violating the FHA, FEHA, or the DPA;

4.      Retain jurisdiction over the Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

5.      Award to Plaintiff all appropriate damages, including, but not limited to, general damages and expectation damages in amounts within the jurisdiction of the Court, all according to proof;

FIRST AMENDED COMPLAINT

6.      Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

7.      Award prejudgment interest pursuant to Civil Code § 3291; and

8.      Grant such other and further relief as this Court may deem just and proper.


Dated: June 24, 2025                                CLEFTON DISABILITY LAW

                                                    */s/ Aaron Clefton*
                                                    BY: AARON CLEFTON
                                                    Attorneys for Plaintiff
                                                    Sara Hazlewood


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


Dated: June 24, 2025                                CLEFTON DISABILITY LAW

                                                    */s/ Aaron Clefton*
                                                    BY: AARON CLEFTON
                                                    Attorneys for Plaintiff
                                                    Sarah Hazlewood

FIRST AMENDED COMPLAINT